OPINION
This appeal arises from a decision of the Belmont County Common Pleas Court to affirm a liquor permit revocation order issued by the Ohio Liquor Control Commission. Appellant, FOE Aerie 0995, comes to this Court to further contest its liquor license revocation. For the following reasons, we affirm the decision of the lower court and liquor commission herein.
On November 15th and 16, 1995, apparently pursuant to an informant's tip, agents from the Department of Public Safety went to Appellant's private club located in Bridgeport, Ohio, to investigate complaints of gambling within the liquor permit premises. On November 15th, a non-club member liquor agent rang the bell to the club and was admitted without question to the premises. While inside, the agent observed various tip tickets, tip boards and gambling pools, each with its own money container. The agent purchases an amount of tip tickets but did not win on his tickets. He did observe the barmaid check on winning numbers for various patrons in her payout record book.
The next day, another liquor agent was admitted to the club, again without question. This agent identified herself as such to the manager and explained that a search was to take place. She and two other agents cleared the premises of patrons and removed from the establishment tip tickets, tip boards and tip cards, football spot sheets, football pools, 50/50 drawing tickets, private lottery tickets, raffle tickets and daily and weekly drawings. The agents also obtained payoff records for a wide assortment of these games. The manager confirmed both the games and the payoff records and amounts to the liquor agents. While it appears this search was purported to be conducted by means of a search warrant, no time-stamped or dated search warrant appears on the record.
Appellant was cited for violating a Liquor Control Commission's Regulation § 4301:1-1-53, known as Regulation 53. Prior to the May 7, 1996 hearing on the violation before the commission, Appellant filed a motion to suppress. This motion was overruled by the commission. At hearing, Appellant denied the charges but stipulated to certain evidence presented, including the agents' reports in two of the four cases filed before the commission which arose out of these two agent visits. The other two cases were dismissed.
Based on the record, the commission revoked Appellant's liquor license on June 5, 1996. The matter was taken before the common pleas court on an administrative appeal. The lower court upheld the commission's decision and Appellant filed a timely appeal to this Court.
Appellant raises three assignments of error before us. In the first assignment of error, Appellant argues:
 "THE DECISION OF THE COMMISSION AND THE LOWER COURT IS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND IS NOT IN ACCORDANCE WITH LAW IN THAT THE ENTRY, SEARCH AND SEIZURE OF PROPERTY BY THE DEPARTMENT VIOLATED APPELLANT'S RIGHTS UNDER THE FOURTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14
OF THE OHIO CONSTITUTION."
In this first assignment, Appellant argues that the entries of the agents on November 15, 1995 and on November 16, 1995 constitute invalid warrantless searches. Thus, all evidence obtained on both of these days should have been suppressed and the charges dismissed. Both this Court and the Supreme Court of Ohio have recently ruled on this very issue. Inasmuch as these decisions are unfavorable to Appellant, Appellant's arguments here must fail.
R.C. § 119.12 sets out the standard of review which the lower court must utilize in an administrative appeal:
 "The court may affirm the order of the agency complained of in the appeals if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. * * * [A] ppeal by the agency shall be taken on questions of law relating to the constitutionality, construction, or interpretation of statutes and rules of the agency, and in such appeal the court may also review and determine the correctness of the judgment of the court of common pleas that the order of the agency is not supported by any reliable, probative, and substantial evidence in the entire record."
Thus, the statute sets out a two-prong test. First, a common pleas court must determine whether the order appealed from is supported by reliable, probative and substantial evidence. An overwhelming amount of such evidence is not required. A court need only have some evidence of the required nature to sustain the commission's decision. Pushay v. Walter (1985), 18 Ohio St.3d 315,316. Secondly, the order appealed must comply with the law.
On further review in an administrative appeal, an appellate court must determine whether the lower court abused its discretion in upholding the administrative order. Pons v. OhioSt. Med. Bd. (1993), 66 Ohio St.3d 619, 621. Abuse of discretion connotes, ". . . more than mere error of law or judgment . . . it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Cedar Bay Constr., Inc. v. Fremont (1990),50 Ohio St.3d 19, 22.
Appellant was cited for violating Regulation 53, which states, in pertinent part:
 "(B) No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code."
With respect to the facts of the instant matter, R.C. § 2915.01(F) defines a "gambling device" as:
 "(3) A deck of cards, dice, gaming table, roulette wheel, slot machine, punch board, or other apparatus designed for use in connection with a game of chance; (4) Any equipment, device, apparatus, or paraphernalia specially designed for gambling purposes.
R.C. § 2915.01(E) next defines a "game of chance" as, "poker, craps, roulette, a slot machine a punch board, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely or wholly by chance." R.C. § 2915.01(G)(1) provides that a "gambling offense" is any violation of R.C. § 2915.02, which states:
"(A) No person shall do any of the following:
"* * *
 "(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit;
"* * *
 "(5) With purpose to violate division (A) * * * (2) * * * acquire, possess, control or operate any gambling device."
In its first assignment, Appellant argues that irrespective of the evidence found, the commission and the trial court erred as a matter of law. Absent a valid search warrant (which appears to be the case here) and absent actual consent for a search, Appellant claims that the agents in this matter conducted an invalid search and all of the evidence should have been suppressed and the case dismissed.
Appellant is correct in arguing that the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect against unreasonable search and seizure. In order for a warrantless search to be upheld, it must fall within a recognized exception to the warrant requirement. Katz v. United States
(1967), 389 U.S. 347 and State v. Penn (1991),61 Ohio St.3d 720. Administrative searches are such exceptions to the warrant requirement so long as the purpose of the search is not to charge an offender with a criminal violation but merely an administrative one. Stone v. Stow (1992), 64 Ohio St.3d 156,164.
Appellant seeks to have a "knock and announce" standard imposed on administrative searches. Appellant argues that, as a private club which is not open to the general public, entry is unlawful without actual consent by the owners of that club. Consent may only be given, argues Appellant, if the agents knock and announce their identities as liquor agents and their purpose in entering. Appellant relies on various decisions of other appellate districts that deceptive practices to gain entry into a private club will result in an invalid warrantless search.
This matter does not involve deceptive entry into Appellant's club. Here, the agents twice rang the buzzer and were admitted to the club with no questions asked. No one asked for an identification card or club membership. No one challenged the agents' right to be in the club and no agent made affirmative misrepresentations. In fact, a very similar warrantless search was made in this very establishment in March of 1995, also resulting in liquor violations. That search was upheld by the Court as a valid exception to the warrant requirement for administrative purposes. FOE Aerie 0995 Bridgeport v. LiquorControl Comm. (Sept. 4, 1998), Belmont App. No. 97 BA 14, unreported. As we noted in the earlier case, the Supreme Court of Ohio decisively put an end to Appellant's arguments in the syllabus of AL Post 763 v. Ohio Liquor Control Comm. (1998),82 Ohio St.3d 108 when it stated:
 "1. The reasonable expectation of privacy in liquor permit premises is minimal because permit holders, regardless of permit class, consent to inspection of the premises by authorized agents through the provisions of the Liquor Control Act and accompanying administrative rules and regulations.
 "2. When conducting a warrantless administrative search pursuant to constitutionally valid statutory inspection program, peace officers and authorized agents or employees of the Department of Liquor Control need not identify themselves prior to gaining entry to the permit premises."
Thus, Appellant's argument as to the first issue must fail. In its second assignment of error, Appellant states:
 "THE LOWER COURT ERRED IN FINDING THAT THE DECISION OF THE COMMISSION WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE BECAUSE THE RECORD FAILS TO ESTABLISH SUFFICIENT EVIDENCE OF A VIOLATION OF REGULATION 53."
Appellant argues in his second assignment that the lower court erroneously believed that Appellant was cited for possessing and operating poker machines, which in this matter it was not. Appellant then argues that the evidence uncovered by the agents amounts only to possession of gambling devices and mere possession does not trigger a violation of Regulation 53. In so doing, Appellant fails to acknowledge the effect of its stipulations to the commission.
We have earlier stated both the provisions of Regulation 53, which requires that the device, ". . . is or has been used for gambling offenses . . ." and the definitions of "gambling device" and "game of chance". Appellant acknowledges in its brief that the club was in possession of materials which can be classified as gambling devices. Appellant argues, however, that there is no proof the devices were or had been used to gamble and relies on a clerical error of the lower court to claim that the court based its decision on the mistaken belief that poker machines are involved in the present violations and that possession of these devices has been dealt with as "far more serious" violations than certain others, Appellant's brief at p. 15.
We note that the lower court did include a passing reference to poker machines in its decision herein. This is apparently due to the fact that Appellant had earlier violations for allowing operation of such devices. See FOE Aerie 0995 Bridgeport v.Liquor Control Comm. (Sept. 4, 1998), Belmont App. No. 97 BA 14, unreported. This reference is only in passing, however, and appears to be nothing more than a mere clerical error. It is included into a lengthy discussion by the court of the evidence which was, in fact, seized at the club, as evidenced by Appellant's stipulations in this matter.
Appellant cannot support its contention that poker machines are a "more serious" form of gambling device than the tip cards, raffle tickets and pool material seized at its establishment. Indeed, R.C. § 2915.01(F) makes no distinction in levels of "seriousness" of gambling devices. Appellant concedes the apparatus seized are, in fact, such devices as defined by statute. Appellant claims, however, that the record supports only possession of the devices which does not amount to a violation of Regulation 53. As we held earlier in FOE Aerie 0995 Bridgeport,supra, mere possession will not establish such a violation. The Ohio Supreme Court has held that a showing of profit is as necessary to prove an administrative violation as to prove a criminal violation. VFW Post 8586 v. Ohio Liquor Control Comm.
(1998), 83 Ohio St.3d 79, 81.
In the present matter, Appellant neglects to recognize the effect of its stipulation to certain evidence before the commission. While it denied the charges before the commission, Appellant did stipulate to the agents' reports. Such a stipulation relieves the Ohio Department of Liquor Control of any need to place additional evidence on the record. Krawu, Inc. v.Liquor Control Comm. (1976), 46 Ohio St.2d 436. Thus, Appellant has stipulated to those portions of the reports which state that the manager acknowledged and explained the various gambling devices and acknowledged that the payoff ledger seized was, in fact, just that. She also explained the entries contained within it to the agents and that they did denote payoffs. Further, the agents themselves reported that various patrons were advised by the barmaid as to winning numbers in gambling pools. Thus, the commission and the court had in front of them some reliable, probative and substantial evidence on which to base a decision that the gambling devices on Appellant's premises were or had been used to gamble. The facts support a conclusion that not only did the wagers by patrons of the club occasionally result in payoff to the patron of a winning ticket or pool, but Appellant was profiting by running these pools and selling the tickets. Evidence established that profit was guaranteed to Appellant. Losing tickets outnumber winning tickets, which assures that purchase money for these is greater than payout. Thus, Appellant's arguments as to assignment of error number two must fail.
In its last assignment, Appellant argues:
 "THE LOWER COURT ERRED IN ITS FAILURE TO MODIFY THE PENALTY OF REVOCATION IMPOSED BY THE LIQUOR CONTROL COMMISSION."
This assignment provides a specious argument, at best. Appellant argues that an administrative penalty can be modified by a common pleas court on review. It relies primarily on a Supreme Court decision found in Henry's Cafe v. Board of LiquorControl (1959), 170 Ohio St. 233, 236. While we agree with Appellant that, under certain factual patterns, a lower court undertaking an administrative review may modify the administrative penalty, it is axiomatic that the court is notrequired to do so. As we have earlier stated that we may review the common pleas court under an abuse of discretion standard,Pons v. Ohio St. Med. Bd., supra, we will not disturb a lawful use of that discretion. In the matter before us, we have already stated that the evidence on the record fully supports the commission and the lower court. Thus, the penalty given for the clear violation of Regulation 53, revocation of the liquor permit, will not be disturbed on review.
For all of the foregoing, the assignments of error advanced by Appellant are overruled and the decision of the lower court to uphold the license revocation by the Liquor Commission is affirmed.
Donofrio, J., Concurs., Cox, P.J., concurs.
APPROVED:
 _________________________________ CHERYL L. WAITE, JUDGE